IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | NO. 3:96-cr-00004 |
| | ) | |
| DONALD THOMAS CABLE | ) | JUDGE CAMPBELL |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Compassionate Release. (Doc. No. 411). The Government responded (Doc. No. 419), and Defendant replied (Doc. No. 421). While the motion was pending, the parties submitted additional filings, including Defendant's updated request to the warden of his facility (Doc. No. 422), a notice by the Government that Defendant has been vaccinated against COVID-19 and a brief on the effect of vaccination on Defendant's request for compassionate release (Doc. No. 423), and Defendant's response to that notice (Doc. No. 424). The Court will consider these additional filings in ruling on the pending motion.

### I.  FACTUAL AND PROCEDURAL BACKGROUND [1]

On July 8, 1998, Defendant Donald Thomas Cable was sentenced a term of life imprisonment without the possibility of parole at a joint plea and sentencing hearing. Defendant pleaded guilty to conspiracy to commit murder and murder of a federal witness. As part of his plea deal, the Government agreed not to seek the death penalty. Defendant has served approximately 25 years of his imposed sentence.

---

[1] The Court relies on the factual and procedural background provided in the district court's order on Defendant's motion for relief under 28 U.S.C. § 2255, decided by Judge Thomas A. Wiseman, Jr., Case No. 3:09-cr-00593, Doc. No. 5.

1

The COVID-19 coronavirus pandemic is a national public health emergency.[2] As of December 9, 2021, COVID-19 has killed more than 780,000 Americans and infected over 49 million.[3] The Centers for Disease Control and Prevention ("CDC") advises that individuals with certain underlying health conditions and older adults are at increased risk for severe illness and death if they contract the virus.[4] The CDC defines "severe illness" as hospitalization, admission to the ICU, intubation or mechanical ventilation, or death.[5] On August 23, 2021, the FDA approved the Pfizer Comirnaty Vaccine for COVID-19.[6] Other vaccines continue to be available under an Emergency Use Authorization. The CDC recommends several measures to prevent spreading the virus, including vaccination, wearing masks, and practicing social distancing.[7]

## II. STANDARD OF REVIEW

In December 2018, Congress passed the First Step Act, Section 603 of which transformed the process for compassionate release under Section 3582(c)(1)(A) to allow prisoners to directly petition courts. Until this amendment, compassionate release motions could only be brought by

---

[2] *See Renewal of Determination that a Public Health Emergency Exists* (October 15, 2021), https://www.phe.gov/emergency/news/healthactions/phe/Pages/COVDI-15Oct21.aspx (renewing, effective Oct. 18, 2021, determination that a nationwide public health emergency exists due to the COVID-19 pandemic and has existed since January 27, 2020) (last visited December 9, 2021).

[3] *CDC, COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker (last visited December 9, 2021)

[4] *See* CDC, *People Who Are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Dec. 9, 2021).

[5] *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 2, 2021).

[6] Approval Letter from Mary Malarkey, Dir. Office of Compliance and Biologics Quality, and Marion Gruber, Dir. Office of Vaccine Research and Review, to Amit Patel, Pfizer Inc. (Aug. 23, 2021), https://www.fda.gov/media/151710/download

[7] *See* CDC, *How to Protect Yourself & Others*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited Dec. 9, 2021).

the Director or the Bureau of Prisons, an option that was infrequently exercised.[8] The compassionate release statute now states in relevant part:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction…
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A).

The requirement that a prisoner exhaust administrative rights to appeal or wait 30 days after the first request to the prison is a mandatory claims processing rule. *U.S. v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). The Sixth Circuit has considered the exhaustion requirement in the context of the unique circumstances presented by the COVID-19 pandemic and concluded that it "operates as an 'unyielding procedural requirement[]'" and is not subject to equitable exceptions. *Id*. at 834. If a prisoner files an untimely motion for compassionate release, the Court should dismiss the motion without prejudice. *Id*.

The Sixth Circuit has instructed that the statute imposes a three-step test. *United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *6 (6th Cir. Nov. 20, 2020). "At step one, a court must 'find[]' whether 'extraordinary and compelling reasons warrant' a sentence reduction." *Id*. Step

---

[8] The first year after passage of the First Step Act, 145 offenders were granted compassionate release under 18 U.S.C. § 3582(c)(1)(A), a five-fold increase from fiscal year 2018, during which 24 compassionate release motions were granted. *See* United States Sentencing Commission, The First Step Act of 2018: One Year of Implementation, 46-49 (Aug. 31, 2020). Of the motions granted during the first year, 96 were filed by the offender. *Id*.

3

two requires the court to "'find[]' whether 'such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id*. Then in step three, the court must consider "any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

In *Jones*, the Sixth Circuit addressed the applicability of the Sentencing Commission policy statement to a motion for compassionate release filed directly with the court by imprisoned persons. *See id*. at *7-9. The Sixth Circuit noted that, since the First Step Act was enacted in 2018, the Sentencing Commission has not amended the policy statement pertaining to reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and the existing policy statement applies only to motions filed by the BOP. *Id*. Finding the existing policy statement "inapplicable" to cases filed by an imprisoned person, *Jones* instructs that in considering a motion for compassionate release filed by an incarcerated person, a court may "skip" step two of the inquiry and has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id*. at *9.

### III.    ANALYSIS

Defendant moves the Court for compassionate release so that he may care for his elderly and ailing father and because he is concerned that he is at higher risk for serious illness or death should he contract COVID-19. (Doc. No. 411-1 at 1, 8). If released from prison, Defendant states that he will reside with and care for his father in Maryville, TN. (*Id*. at 3). Defendant also includes a letter from his sister stating that he may move into a property she owns in Lafayette, AL, and a letter from his father requesting Defendant's release. Defendant's father states that he is in poor

4

health and in need of his son's assistance. (*Id* at 25, 26). He further states that his daughter cares for him, but that his care is difficult for her. (*Id*.)

The Government makes several arguments against Defendant's release. First, the Government argues that while Defendant has exhausted his administrative remedies with respect to his request to care for his father, he has not presented his COVID-related request to his warden. The Government states that the Court should deny his motion without prejudice to refiling once he has done so.

The Government also argues that Defendant has not presented extraordinary and compelling reasons for release. They state the care of an elderly relative is routinely rejected by courts as insufficient, particularly when other family members are available to care for that person. Additionally, the Government disputes Defendant claims of medical conditions such as his history of smoking and BMI of greater than 30, stating that his medical records do not support his assertions. The Government argues that the conditions that are reflected in his medical records, such as hypertension and an enlarged prostate, do not present extraordinary and compelling reasons as they are not high risk factors and are being well-managed in prison.

Finally, the Government argues that, should the Court find extraordinary and compelling reasons exist for compassionate release, Defendant's motion should still be denied because the Section 3553(a) factors weigh against release. The Government specifically points to the violent and serious nature of the offense and issues of specific and general deterrence.

Defendant disputes the Government's dismissal of his medical conditions and argues that his rehabilitation in prison shows that he is not a danger to society. He states that his chance of recidivism is low due to his age and points to other cases where courts have granted compassionate release to individuals serving life sentences. He asks the Court to grant his motion so that he may

5

care for his father. He does not object to being placed on supervised release for life should the Court grant his motion.

As an initial matter, the Court will find that Defendant has exhausted his administrative remedies as to both claims for relief. Defendant has requested release in order to care for his father several times, and each request has been rejected. (Doc. No. 411-1 at 33-35). While this motion was pending, Defendant submitted his request due to COVID, which was not addressed within thirty days. (Doc. No. 422). In the interest of judicial economy and due to the length of time Defendant's motion has been pending, the Court will consider the updated request to the warden.

The Court is not convinced that Defendant has presented extraordinary and compelling reasons for release. First, Defendant presents the need to care for his ailing father. While this Court is sympathetic to the health issues experienced by Mr. Cable, Defendant is not the sole available caregiver. His father attests that he is currently being cared for by his daughter, Defendant's sister. Courts have routinely rejected the notion that the need for additional help constitutes an extraordinary and compelling reason. *See United States v. Gibson*, 2021 WL 1712833 at *5 (E.D. Mich. Apr. 30, 2021) (rejecting defendant's argument where at least one other potential caregiver was available); *United States v. Swarn*, 2021 WL 4077344 at *2 (E.D. Mich. Sept. 8, 2021) (collecting cases).

Defendant also cites concerns about contracting COVID-19 while incarcerated and his risk of severe illness due to his hypertension, BMI of over 30, history of smoking, and other comorbidities. The Court acknowledges that, based on CDC guidance, Defendant's diagnosis of hypertension may put him at increased risk for severe illness. However, the Court notes that Defendant has been vaccinated, which, as the Government argues, undermines his argument. While the Sixth Circuit has not opined on the effect of a movant's vaccination status on the

6

extraordinary and compelling analysis, district courts throughout the circuit have noted a movant's decision to receive or decline the vaccine when considering motions for compassionate release. *See e.g. United States v. Jackson*, No. 3:11-CR-00138, 2021 WL 1721427, at *1 (M.D. Tenn. Apr. 30, 2021) (collecting cases). Nevertheless, even if the Court found that extraordinary and compelling reasons existed in this case, the relevant Section 3553(a) factors do not weigh in favor of a reduced sentence.

Section 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary" to comply with a number of factors including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; the applicable Sentencing Guidelines range; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Notwithstanding Defendant's assertions to the contrary and in consideration of the factors set forth in Section 3553(a), the Court does not find a reduction to "time served" appropriate in this case. The Court gives particular consideration to the following factors.

*Nature and Circumstances of the Offense*. This Court cannot overlook the heinous and abhorrent crime that resulted in Defendant's incarceration. In 1996, Defendant conspired with a co-defendant to kill a federal witness to prevent her testimony. He then crossed state lines from Alabama to Tennessee and committed the murder himself, shooting her twice and stabbing her nine times.

7

*Sentencing Guideline Range*. For his violent crime, Defendant faced two possible sentences: life in prison or death. As a result of a plea agreement, the Government did not seek the death penalty. Defendant has served 25 years of the mandatory minimum term of life imprisonment.

*The Need to Provide Just Punishment, and Promote Respect for the Law*. Considering the nature and circumstances of the offense and the mandatory minimum sentence, these final factors are particularly persuasive. A time-served sentence would not promote respect for the law, provide just punishment, or protect the public. Indeed, the murder of a witness demonstrated no respect for the law, and the Court is not convinced that a sentence less than the mandatory minimum will provide just punishment for that offense.

Defendant raises understandable concerns based on the COVID-19 pandemic. However, given the serious nature of the criminal conduct for which he was sentenced, the Court finds that the Section 3553(a) factors do not support a sentence of "time served." Accordingly, Defendant's Motion for Compassionate Release (Doc. No. 411) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE